IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JULIAN PRATT WATERMAN ARCHER
and JANE GOCHENOUR ARCHER                                      PLAINTIFFS

V.                              CASE NO. 5:19-CV-5075

STANLEY V. BOND
and STANLEY V. BOND, LTD.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion for Summary Judgment (Doc. 28) and Brief in Support (Doc. 29) filed by Defendants Stanley V. Bond and Stanley V. Bond, Ltd. Plaintiffs Julian Pratt Waterman Archer and Jane Gochenour Archer (collectively, "the Archers") filed a Response (Doc. 32), and Bond filed a Reply (Doc. 36). For the reasons stated herein, the Motion is **DENIED**.

### I. BACKGROUND

The following facts are taken from the Archers' Complaint (Doc. 1). They filed this lawsuit on April 12, 2019, alleging that their former bankruptcy attorney, Stanley V. Bond, and his professional limited liability company, Stanley V. Bond, Ltd. (collectively, "Bond"), are liable for common-law negligence and breach of contract. The Archers once owned Archer, L.L.C., a limited liability company that, in turn, owned a barn, an inn, a cottage, and multiple acres of land in Fayetteville, Arkansas. The Archers also owned Pratt Place Inn, Inc., a corporation that operated the inn and the cottage; Sassafras Hill Enterprises, Inc., a corporation that operated the barn; and Sassafras Hill Communications, Inc., a corporation that owned a cell tower site leased by a wireless service provider.

The Complaint asserts that in March of 2014, the Archers received a foreclosure notice from Simmons Bank regarding a two-month delinquency on a building loan secured by their various properties. The Archers sought legal advice from Bond in order to avoid foreclosure and to file for bankruptcy. Bond counseled the Archers to file for Chapter 11 bankruptcy as to two of their businesses, Archer, L.L.C., and Sassafras Hill Communications, Inc. Those petitions were filed on April 24, 2014. Sometime after that, the Archers became aware that the delinquent loan held by Simmons Bank was cross-collateralized and/or guaranteed by them personally and by Pratt Place Inn, Inc., and Sassafras Hill Enterprises, Inc. In the last quarter of 2014, Simmons Bank began collection efforts against the Archers, Pratt Place Inn, Inc., and Sassafras Hill Enterprises, Inc.

On January 15, 2015, Bond filed Chapter 11 bankruptcy petitions on behalf of Pratt Place Inn, Inc., and Sassafras Hill Enterprises, Inc. A few months later, on April 28, 2015, he filed a Chapter 11 petition on behalf of the Archers. In their Complaint, the Archers allege that Bond committed legal malpractice when he "failed to list certain assets" on their Chapter 11 bankruptcy schedules, "failed to properly file claims of exempt assets," and "neglected many important procedural requirements that must be strictly adhered to maintain a Chapter 11 bankruptcy proceeding." (Doc. 1, p. 5). As a result of these errors, the United States Trustee filed a motion to convert the Archers' Chapter 11 bankruptcy into a Chapter 7 bankruptcy on March 7, 2016. According to the Archers, Bond failed to oppose the motion, and during the hearing on May 12, 2016, he advised them "to consent to conversion of their individual and related entity bankruptcy cases from Chapter 11 to Chapter 7." (Doc. 32, p. 2). The bankruptcy court granted the motion to convert the same

day as the hearing, "thereby exposing virtually all of Plaintiffs' assets to complete liquidation to pay off creditor debts." (Doc. 1, p. 6). The Archers believe that if Bond had "ensured complete disclosure and full compliance with all Chapter 11 requirements at the outset and thereafter, the various Chapter 11 cases would not have been converted to Chapter 7 liquidations and Plaintiffs would not have been denied a discharge." *Id.* at p. 8.

After the Archers' Chapter 11 case was converted to a Chapter 7 case, they claim Bond failed to take adequate steps to delay or prevent the sale of their assets and did not advise the bankruptcy Trustee of potential sale offers "that would have avoided the liquidation sale of other assets." (Doc. 32, p. 4). On August 19, 2016, the Trustee filed an adversary complaint to deny the Archers' Chapter 7 discharge. The discharge was denied, and the Archers "lost their desired property and valuable personal belongings when this should have been avoided, and they did not even receive a discharge or other protection from the bankruptcy, leaving them in a worse position from when they originally sought competent legal consultation from Defendants." (Doc. 1, p. 8). All of their real property was sold by the Trustee "without obtaining any appraisals or seeking competitive bids," and the buyer "was thereby able to buy them at a steep discount." *Id.* The only items of property the Archers did not lose were Sassafras Hill Communications, Inc., and "all the personal property to which the Archers still claim possession." *Id.* at p. 9.

The Motion for Summary Judgment now pending before the Court does not attempt to argue that Bond met the applicable standard of care with respect to his legal representation of the Archers and their businesses; instead, the Motion focuses solely on the statute of limitations. Bond argues, and the Archers do not dispute, that the applicable

3

statute of limitations for claims of attorney malpractice is three years. Ark. Code Ann. § 16-56-105; *see also Goldsby v. Fairley*, 831 S.W.2d 142, 143 (Ark. 1992) ("Undisputedly, the three-year statute of limitations applies to actions against attorneys for negligence."). Though the Archers bring claims for both professional negligence and breach of contract—arising from a contract "to represent and provide legal services to Plaintiffs" (Doc. 1, p. 10)—the "gist" of the action is for legal malpractice/negligence, and the three-year statute of limitations applies to all claims, including the contract claim. *See Sturgis v. Skokos*, 977 S.W.2d 217, 220–21 (Ark. 1998) (finding that in a legal malpractice lawsuit involving claims for negligence and breach of contract, the "gist" of the action was for attorney negligence and the statute of limitations as to all claims would be three years, as "[t]he obligation to act diligently is present in every lawyer-client relationship" and "[t]he violation of that obligation is, by definition, nothing more than negligence").

The parties agree that on May 11, 2018, they entered into a 120-day tolling agreement as to all causes of action "concerning the attorney-client relationship and the legal services provided." (Doc. 33-1, p. 1). In Bond's view, the statute of limitations should be calculated by starting with the date the Complaint was filed, April 12, 2019, and counting back three years to April 12, 2016. He believes that the Complaint asserts negligent acts and omissions constituting legal malpractice that occurred well prior to April of 2016. In particular, Bond points out that the Archers' first allegation of malpractice occurred on April 21, 2014, when Bond filed for Chapter 11 bankruptcy as to only two of their businesses as opposed to all of them. Next, the Archers allege that Bond negligently advised them about which assets to list on their Chapter 11 bankruptcy schedules filed on April 28, 2015, and that error caused the Trustee to move to convert their Chapter 11

4

case to a Chapter 7 case and exposed their assets to liquidation. Bond argues that if the Court assumed April 28, 2015, was the earliest date that he committed any act of legal malpractice, the claim would have expired by April 28, 2018—thirteen days before the tolling agreement was signed.

The Archers have a different interpretation of the tolling agreement. They, like Bond, begin the statute-of-limitations calculation with the date the Complaint was filed, April 12, 2019. Then they subtract three years plus 120 days—the length of time the statute was tolled by agreement. "Three years and 120 days before [April 12, 2019] was December 13, 2015," so the Archers contend that if any acts or omissions constituting a claim for legal malpractice occurred after December 13, 2015, the case should survive summary judgment. (Doc. 32, p. 2).

## II. LEGAL STANDARD

### A. Summary Judgment

The standard for summary judgment is well established. Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

5

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). However, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, in order for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### B. Legal Malpractice

According to the Arkansas Supreme Court:

> An attorney is negligent if he or she fails to exercise reasonable diligence and skill on behalf of the client. In order to prevail on a claim of legal malpractice, a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages. In order to show damages and proximate cause, the plaintiff must show that but for the alleged negligence of the attorney, the result in the underlying action would have been different. An attorney is not liable to a client when, acting in good faith, he or she makes mere errors of judgment. Moreover, attorneys are not, as a matter of law, liable for a mistaken opinion on a point of law that has not been settled by a court of highest jurisdiction and on which reasonable attorneys may differ.

*Pugh v. Griggs*, 940 S.W.2d 445, 447 (Ark. 1997) (internal citations omitted).

### III. DISCUSSION

As the Court previously explained, Bond's summary judgment motion does not attack the merits of the Archers' claims but focuses only on the statute of limitations.

6

Therefore, for purposes of evaluating the motion, the Court will assume that the Archers' substantive claims are true.

As a starting point for the discussion, the Court observes that "[i]n Arkansas malpractice cases, concerning attorneys . . . the statute of limitations begins to run, in the absence of concealment of the wrong, when the negligence occurs, not when it is discovered." *Ford's, Inc. v. Russell Brown & Co.*, 773 S.W.2d 90, 92 (Ark. 1989). This means that Arkansas ascribes to the "occurrence rule" in professional malpractice cases, and a cause of action is said to accrue when the negligent act occurs, unless the professional actively conceals the wrongdoing. *See Ragar v. Brown,* 964 S.W.2d 372, 377 (Ark. 1998). Accordingly, the statute of limitations cannot be calculated as the parties suggest by counting *backward* from the date the Complaint was filed. Instead, the limitations period should be calculated *forward* from the date of accrual, *i.e.* the date that an act of legal malpractice occurred. The tolling agreement paused the accrual of time for 120 days, but "d[id] not extend the statute of limitations on any claims that h[ad] already expired as of [May 11, 2018.]" Doc. 33-1, p. 1.

To establish the element of proximate causation on a claim for legal malpractice, at least some evidence must show that "but for the alleged negligence of the attorney, the result in the underlying action would have been different." *Pugh*, 940 S.W.2d at 447. For Defendants to prevail on their Motion for Summary Judgment, then, the Court would have to find that there is no genuine dispute as to whether a but-for cause of the harm to Plaintiffs occurred outside the statutory period. Here, the alleged harm is easy enough to identify: The Archers blame Bond for the liquidation of their property and the non-discharge order suffered in the bankruptcy proceedings. However, pinpointing the date

7

on which the statute of limitations *began* to accrue is more difficult. This is true because the Archers' Complaint alleges (often in a conclusory fashion) multiple (overlapping) acts and omissions during the course of Bond's three-year period of representation that (singularly and/or collectively) constitute "but-for" causes of their harm—none of which are disputed for summary judgment purposes.

Some of those possible but-for causes are clearly outside the statute of limitations, but others are not. For example, the Complaint asserts that Bond began advising the Archers improperly from the very beginning of their business relationship, sometime in April of 2014. They maintain that on April 21, 2014, Bond filed Chapter 11 bankruptcy petitions for only two of their businesses, Archer, L.L.C., and Sassafras Hill Communications, Inc., but failed to realize that the note/debt held by Simmons Bank was secured by Pratt Place Inn, Inc., Sassafras Hill Enterprises, Inc., and the Archers personally. The Archers believe that Bond should have filed for Chapter 11 protection on their behalf and on behalf of all their collateralized business entities immediately. (Doc. 1, p. 4). If the factfinder were to conclude that this omission by Bond was the but-for cause of the Archers' injury, the Archers' claims would be barred by the statute of limitations.[1]

Another possible but-for cause of the Archers' damages is Bond's "fail[ure] to properly prepare Plaintiffs' bankruptcy petition and schedules [filed on April 28, 2015,] by

---

[1] The Court notes, however, that the Archers also concede that Bond did file for Chapter 11 protection for Pratt Place Inn, Inc., and Sassafras Hill Enterprises, Inc., on January 15, 2015, and for the Archers personally on April 28, 2015. Without additional facts to suggest that Bond's April 2014 filing omissions were the "but-for" cause of the Archers' ultimate loss of their personal property, the Court would likely find that these omissions are legally insufficient to constitute the factual basis for a malpractice claim and, consequently, could not serve as a trigger to commence the running of the statute of limitations.

8

failing to list certain assets, including horses; a garage and apartment in Paris, France; furnishings inside the Inn, many of which were antique family heirlooms; bank accounts; and other assets." (Doc. 1, p. 5). The Archers contend that this act/omission by Bond directly resulted in "many of Plaintiffs' personal assets eventually bec[oming] part of their bankruptcy estate and subject to liquidation to satisfy creditor debts." *Id.* And they believe Bond's negligent advice concerning their asset disclosures prompted the United States Trustee to move to convert their Chapter 11 proceeding into a Chapter 7 proceeding. Again, if the factfinder were to conclude that those facts are true and constitute malpractice, the claim would nevertheless be barred by the statute of limitations because the petition was filed on April 28, 2015, and the three-year statutory period would have expired on or before April 28, 2018—two weeks prior to the parties' May 11, 2018 tolling agreement.

But the Archers point to other acts/omissions by Bond in early 2016 that, if found to be a but-for cause of the liquidation of the Archers' personal assets, would mean that their malpractice claim was preserved by the tolling agreement. For example, the Complaint alleges the following but-for causes: (1) Bond's negligent advice, acts, or omissions in the months leading up to the Trustee's decision to file a motion for conversion; (2) Bond's alleged failure to file a response in opposition to the motion for conversion and/or his advice to the Archers to consent to the conversion; (3) Bond's alleged failure to convey to the Trustee the written offers for sale of certain isolated parcels of real property; and (4) Bond's alleged failure to challenge the Trustee's motion for approval of the sale of all of the Archers' real property.[2] If any of these acts/omissions

---

[2] This is a non-exhaustive list.

9

were found to be a but-for cause underlying the Archers' claims, the statute of limitations would not bar the Archers' recovery.

Because the Archers' Complaint states multiple overlapping claims (sometimes in conclusory and collective terms), and because Bond's summary judgment briefing does not engage with the merits of any particular claim of malpractice, the Court cannot say at this juncture that the entire Complaint should be dismissed as a matter of law. The Court will therefore reserve that determination until such time as it is known which (if any) assertions of malpractice are submitted to and determined by the jury to be but-for causes of the Archers' alleged harm.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Doc. 28) filed by Defendants Stanley V. Bond and Stanley V. Bond, Ltd., is **DENIED**.

**IT IS SO ORDERED** on this 17th day of August, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE